**Roosevelt YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 268–93.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 26, 1994.

Walter M. Reaves, Jr., West, for appellant.

Paul E. Gartner, Jr., Former Dist. Atty., & Tanya S. Dohoney, Asst. Dist. Atty., & John W. Segrest, Dist. Atty., & Thomas C. West, Asst. Dist. Atty., Waco, Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S MOTION FOR REHEARING AFTER PETITION FOR DISCRETIONARY REVIEW REFUSED*

MALONEY, Judge.

A jury convicted appellant of burglary of a building and assessed punishment at life imprisonment after finding he was a habitual offender. This conviction was affirmed. *Young v. State*, 803 S.W.2d 335 (Tex.App.—Waco 1990). This Court reversed after finding error under Tex.R.Crim.Evid. 611 [1] and remanded the cause to the Court of Appeals to conduct a harm analysis pursuant to Tex. R.App.Pro. 81(b)(2).[2] *Young v. State*, 830 S.W.2d 122 (Tex.Cr.App.1992). The Court of Appeals again affirmed the conviction, with one justice dissenting, finding the error was harmless beyond a reasonable doubt. *Young v. State*, 840 S.W.2d 785 (Tex.App.—Waco 1992). We initially refused appellant's petition for discretionary review, but on motion for rehearing granted review to determine whether a proper analysis was conducted pursuant to Tex.R.App.Pro. 81(b)(2).[3]

At trial, the State presented testimony from four Waco police officers who described how they responded to a reported burglary at Billy's Bar on the night of March 31, 1988.

---

1. Tex.R.Crim.Evid. 611 provides in relevant part:

 If a witness uses a writing to refresh his memory for the purpose of testifying either while testifying or before testifying, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portion not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal.

 We granted appellant's initial petition for discretionary review to determine whether Rule 611 required appellant to preserve and make available to the appellate court business records belonging to and used prior to testifying by an adverse witness to refresh her recollection where the trial court denied appellant's request to examine and motion to produce the records before cross-examining the witness. *Young v. State*, 830 S.W.2d 122 (Tex.Cr.App.1992). In an opinion by Judge Clinton in which three other members of the Court joined, one concurred, and four dissented, we held that when appellant invoked Rule 611, he was entitled to have the records produced for inspection for purposes of cross-examining the witness. We held that, since the prosecution did not claim that the records contained "matters not related to the subject matter of the testimony," the latter, remedial portion of Rule 611 was not implicated. We concluded that, since the latter part of Rule 611 never became operative, the court of appeals erred in faulting appellant for failing to utilize the provisions contained therein to preserve and make available that which the trial court never examined, excised or withheld under Rule 611. Thus, appellant had properly preserved error, we found error, and we remanded the case to the court of appeals to conduct a harmless error analysis.

2. Rule 81(b)(2) provides:

 If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

3. Judge McCormick, in his dissent, contends that appellant did not properly preserve error pursuant to Rule 611 since he did not make the records available to the appellate court. We note that we resolved this exact issue in our opinion on appellant's first petition to this Court, *Young v. State*, 830 S.W.2d 122 (Tex.Cr.App.1992), and that the appropriate time to take exception to our ruling has passed. We decline to revisit this issue now, particularly because it was not before the court of appeals on remand and is outside the scope of the ground on which we granted review.

 The dissent further contends, in the alternative, that Rule 611 was not the appropriate rule at

There they found the building dark, appellant hiding in the bathroom, a padlock on the front door broken, a tire tool on the floor, and unopened bottles of liquor "loaded and ready to go" in a trash can.

Leotia Howard testified for the State that at the time of the burglary she and her husband, Billy Howard, owned and operated the bar, but Billy had died seven months after the burglary. Leotia Howard testified that she did not know appellant, had never given him permission to be in the bar when it was closed, and said the alcohol, padlock, and other items were in different positions than when she last left the building. She was also the bookkeeper for Billy's Bar and had reviewed her books before testifying. She testified that the bar's records did not show that any construction work was being done there on the day of the alleged burglary, nor did she independently remember any work being done then. In addition, Leotia Howard testified that nothing in her books indicated that appellant had ever been hired to work at Billy's Bar.

At the close of Leotia Howard's direct examination, appellant, asked, for purposes of impeachment, for all of the records that Leotia Howard had reviewed prior to testifying. The prosecutor stated that he did not have them and had not asked Leotia Howard to bring them to trial, although he had asked her to review them. He argued that the State was not required to produce the records because essentially Leotia Howard testified to the absence of any records indicating that appellant had been hired to work at Billy's Bar. The trial court overruled the objection.

Appellant presented two witnesses, Berry and Evans, who testified that they were part of a crew, which included appellant, that had worked remodeling Billy's Bar. Their boss, Henry Harris, had been hired by Billy, and

Harris employed the crew on a day-to-day cash basis. Berry testified that Harris and appellant would occasionally spend the night in the bar, and the crew sometimes worked through the night. Evans testified that he and appellant stayed overnight in the bar on "quite a few occasions." Evans could not remember when in 1988 they had worked at Billy's Bar. Berry thought they had worked from late February until mid-March when he had quit, but the rest of the crew had continued working for at least several weeks thereafter.

The Court of Appeals reasoned that even if Leotia Howard's records revealed appellant had been employed to remodel the bar at the time, the jury would not have disregarded the other overwhelming evidence which showed appellant was in the act of committing a burglary when the officers arrived; therefore, the failure to produce the records was harmless beyond a reasonable doubt. Justice Vance dissented, noting that overwhelming evidence alone is not an appropriate basis for finding error harmless under Rule 81(b)(2). *See Higginbotham v. State,* 807 S.W.2d 732 (Tex.Cr.App.1991).

In *Gipson v. State,* 844 S.W.2d 738, 741 (Tex.Cr.App.1992), we summarized the application of Rule 81(b)(2) as set out in *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App.1989):

Rule 81(b)(2) is clear. It says that we must reverse when error is found in the proceedings below *unless* we are able to analyze the error and its effects and determine beyond a reasonable doubt that error made no contribution to the conviction or punishment. In other words, Rule 81(b)(2) mandates reversal unless strong argument is brought to bear which enables the appellate court to make an intelligent determination that the error and all its tangential effects made *no* contribution to the conviction or punishment.

issue. That is, the prosecution was not required to produce the records because they fell within Rule 803(7), absence of entry in records kept in accordance with the business records exception to the hearsay rule, not Rule 611. Since we have already determined that the trial court commit-

ted a Rule 611 error, *Young,* 830 S.W.2d at 122, this issue has already been resolved by our opinion on original submission. In addition, this issue was not before the court of appeals on remand, it exceeds the scope of our review in this case, and it is not argued by the State.

By its very nature, Rule 81(b)(2) requires a subjective analysis by which the appellate court must calculate as much as possible the probable impact of the error on the jury.... Each case must be examined on its own merits by the appellate court, and if the record does not expressly show ... that the error complained of clearly contributed to the conviction, then the error must undergo an in-depth analysis for harm to the defendant.

In doing a harm analysis, the reviewing court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a judge or juror would probably place upon the error. In addition, the court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

In *Love v. State*, 861 S.W.2d 899, 904 (Tex.Cr.App.1993), we followed and quoted from *Shelby v. State*, 819 S.W.2d 544, 547 (Tex.Crim.App.1991), in which this Court articulated the following analysis to be done when evidence has been excluded via the erroneous limitation of cross-examination:

The analysis is essentially a three-prong process:

First, assume that the damaging potential of the cross-examination were fully realized. *Van Arsdall* [475 U.S. at 683], 106 S.Ct. at 1438.[4] Second, with that assumption in mind, review the error in connection with the following factors:

1) The importance of the witness' testimony in the prosecution's case;

2) Whether the testimony was cumulative;

3) The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;

4) The extent of cross-examination otherwise permitted; and,

5) The overall strength of the prosecution's case.

*Van Arsdall* [475 U.S. at 683], 106 S.Ct. at 1438.

Finally, in light of the first two prongs, determine if the error was harmless beyond a reasonable doubt. *Shelby*, 819 S.W.2d at 547. To perform this analysis, we must review the facts of this case and the excluded evidence.

Although the error here concerns violation of an evidentiary rule rather than a constitutional provision as in *Shelby, compare United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969) (discovery violation under the Jencks Act involves rules of evidence and not constitutional grounds), both this cause and *Shelby* concern the error of effectively excluding evidence which could be used in cross-examination.[5] As such, the *Shelby* analysis is more appropriate here than that set out in *Harris*, which addressed the improper **admission** of evidence,[6] even though both analyses are applicable.

 The records used by Leotia Howard to refresh her memory are not included in the record, so we assume for purposes of a harmless error analysis that they would show the facts most favorable to the injured party.[7] For purposes of the instant case, we therefore assume that the records would

---

**4.** *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

**5.** *Love* addressed error in not allowing the defendant to recall a State's witness for further cross-examination.

**6.** Appellant in *Harris* challenged the introduction of two extraneous offenses in his capital murder trial.

**7.** *See Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438 ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.").

Unlike our holding in *Zanders v. State*, 480 S.W.2d 708, 710–11 (Tex.Crim.App.1972), *cert. denied*, 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 106 (1975), we will not presume error per se, but

show that Billy Howard had in fact hired Henry Harris for remodeling work at Billy's Bar for a period including March 31, 1988. Appellant was convicted of burglary, so the State was required to show that he did not have the owner's effective consent to enter the bar, not just that he did not have consent to enter and take things. Leotia Howard's testimony was the only evidence which established that appellant did not have an owner's consent to enter, and therefore was important and not cumulative. Only the circumstances of the entry as related by the officers corroborated Leotia Howard's testimony, while the testimony of Berry and Evans contradicted it.

The State had requested that Leotia Howard review her records so that she could testify to their contents, yet had not asked her to bring them to the courtroom, even though the records would have been subject to production under Tex.R.Crim.Evid. 611. In closing argument, the State contended that it did not matter whether appellant was actually working at the bar, "but based upon the evidence the conclusion is he never did."

Business records showing that remodeling work was being done by Henry Harris at the bar on the date appellant was found inside, combined with Berry's and Evans' testimony, could have raised a reasonable doubt as to whether appellant lacked consent to enter the building. Thus, the jury could have found that appellant was guilty only of attempted theft, not burglary, because he had Billy Howard's effective consent to enter when the bar was otherwise closed to the public.[8] Consequently, we cannot conclude beyond a reasonable doubt, that the error did not contribute to appellant's conviction for burglary.

■ The Court of Appeals erred in applying an "overwhelming evidence" test rather than applying the analyses set out in *Shelby* and *Harris* and considering the effect of the error in light of appellant's evidence. The judgment of the Court of Appeals is reversed and this case is remanded to the trial court for a new trial.

CAMPBELL, J., not participating.

---

will conduct a harmless error analysis. The appellant in *Zanders* moved that the trial court make a prior statement of a witness available to him for purposes of impeachment and cross-examination, and the trial court refused. The appellant then requested that the court make an *in camera* inspection of the statement, and the court refused. Later, the appellant asked the trial court to include the statement in the record for purposes of appeal, and the court denied his request. We held that the appellant was entitled to inspect the prior statement of a witness under *Gaskin v. State*, 353 S.W.2d 467 (Tex.Crim.App. 1962) and that the trial court had committed reversible error in failing to order its production. We further held that "[w]here, as in the instant case, appellant demonstrates that he was entitled to inspect the prior statement of the witness and the court erred in failing to order its production, and further, after adequate post trial request, also fails to incorporate the statement in the appellate record, reversible error has been committed because the appellant has been denied the opportunity to prove harm to this court." *Zanders*, 480 S.W.2d at 710–11.

In the case at hand, appellant only made a request *at trial* that the documents be produced; he did not request an *in camera* inspection, nor did he request that the court include the statement in the record for the purposes of appeal. Thus, we decline to hold that reversible error has been committed without subjecting the error to a harmless error analysis. In *Zanders*, we stated

that, where a trial court erroneously denies a motion for inspection of a statement at trial, a cause will not be reversed *unless* harm is shown. However, we concluded that when the appellant further requests that the trial court incorporate the statement into the appellate record, and the trial court denies that request, the trial court has committed error per se. *Zanders*, 480 S.W.2d at 710.

We reinforced this distinction in *White v. State*, 496 S.W.2d 642, 646 (Tex.Crim.App.1973). In *White,* the appellant requested production of offense reports authored by the complaining witness, the trial court examined the reports *in camera* and denied his request. The appellant then requested that the reports be sealed and forwarded to the appellate court with the record, and the court complied. This Court found a *Gaskin* error, but held that it was subject to a harm analysis since the trial court did not deny the appellant's request to incorporate the statement into the appellate record. Rather, "[T]he harmfulness of the error is dependent upon whether an examination of the report or statement by this court on appeal demonstrates that the accused should have been allowed the statement for the purposes of cross-examination and possible impeachment." *White*, 496 S.W.2d at 646.

8. *Compare* Tex.Penal Code Ann. § 30.02 *with* Tex.Penal Code Ann. § 31.03.

McCORMICK, Presiding Judge, dissenting on appellant's petition for discretionary review.

The rudder came off this boat when this Court granted appellant's petition for discretionary review of the original opinion in *Young v. State*, 803 S.W.2d 335 (Tex.App.— Waco 1990). (*Young I*). We should attempt to rescue the boat now before its unguided meandering through rough seas crashes us on the rocky shore.

After reviewing again the original opinion in *Young v. State*, supra, and our opinion on petition for review, *Young v. State*, 830 S.W.2d 122 (Tex.Cr.App.1992) (Young II), I still cannot understand how Rule 611, Tex. R.Crim.Evid., ever got in this case, top, side or bottom. Even if it could be argued with a straight face that Rule 611 was in any way implicated in this case, the Court of Appeals was absolutely correct when it held in its opinion on rehearing that appellant failed to preserve error. *Young v. State*, 803 S.W.2d 335, 340.

At appellant's trial, Leotia Howard, whose then deceased husband had co-owned the burglarized premises with her, testified that appellant did not have permission to enter the premises on the date in question. As noted in footnote 1 of our original opinion on discretionary review, Mrs. Howard also testified that she was the bookkeeper for the burglarized business. She further testified:

"Q. At my request did you have an occasion to review your books regarding the area of around March 31, 1988?

"A. Yes.

"Q. Was there any construction work being done at Billy's on March 31, 1988?

"A. I don't recall any.

"Q. In addition to that, you did check the books; is that correct?

"A. I did.

"Q. Are there any invoices or any sort of payment records reflecting work being done on March 31, 1988?

"A. No.

"Q. Was there anything in your records about a Roosevelt Young being hired to do any work at Billy's?

"A. No. (S.F. 83–84)

"After close of direct examination counsel for defendant requested 'all of the records that she reviewed prior to her testimony for purposes of impeachment,' generating the following dialogue:

"[Prosecutor]: I don't have them, Your Honor.

"The Court: You don't have any?

"[Prosecutor]: I asked her to review them. I didn't ask her to bring them to Court with her.

"[Defense]: Your Honor, if she reviewed those records *to refresh her memory* prior to the time she came here, I'm entitled to have them to cross examine her with. I move at this time that I be provided with a copy of them.

"[Prosecutor]: I think essentially *what she testified to is the absence of any records,* Your Honor.

"The Court: I overrule the objection. Proceed with the examination." (Emphasis added)

It is unmistakable that the State was offering the testimony of the witness pursuant to Rule 803(7) (Absence of entry in records kept in accordance with the provisions of Rule 803(6) [Records of regularly conducted activity.]) There was no showing that Rule 611 was implicated.

Following his conviction, appellant argued that he had a right to review the records of the bar, and argued that the failure to provide the records violated a pretrial discovery motion. The Court of Appeals held that appellant failed to preserve the issue because a ruling was never obtained on his motion for discovery. *Young I*, 803 S.W.2d at 338. On motion for rehearing, appellant argued that the Court of Appeals erred in relying on Article 39.14, V.A.C.C.P., and that he was

entitled to the records under the provisions of Rule 611. The court held that, regardless of whether the court relied on Article 39.14 or Rule 611, appellant had still failed to preserve error. *Young I,* 803 S.W.2d at 340.

It is not disputed that Rule 611 was a "dramatic expansion of Texas practice." *Texas Rules of Evidence,* John Ackerman, Release 3, 611–1. The Rule "grants an adversary the right to inspect documents used to refresh memory regardless of whether the witness reviews them before or while testifying." *Texas Rules of Evidence,* Goode, Wellborn and Sharlot, 1 Texas Practice, Section 612.3. But what we must focus on is the purpose of the rule. As its title explains, Criminal Rule 611 deals with "Writing Used to Refresh Memory." It has been explained:

> "When a witness experiences a lapse of memory, counsel may use several methods to assist the witness to remember. Essentially, counsel may employ a mnemonic device, most often a writing but by no means limited to writings, in an effort to prod the memory.

> "If, after confrontation with the mnemonic device, the witness still does not remember, it may be possible to introduce a writing for whose accuracy the witness can vouch even though the witness is unable to remember the contents. This is a past recollection recorded, not present recollection refreshed. Unfortunately, the courts have confused the two separate rules. A past recollection recorded may be introduced as an exception to the hearsay rule under Rule 803(5). Present recollection refreshed is the subject of Civil Rule 612 and Criminal Rule 611, and is favored over past recollection recorded. This rule is generally consistent with pre-rules law.

> "The predicate for present recollection refreshed differs from that for past recollection recorded. Under the former, a mnemonic device is used after counsel determines that a witness had personal knowledge at some time in the past but now cannot remember. If the witness's

memory is refreshed, the witness testifies directly as to the matter. Despite some older and ill-advised cases to the contrary, it is not necessary that the witness have prepared the writing used to refresh. What matters is whether the memory is, in fact, refreshed. If so, the *testimony* is received as substantive evidence. The writing used to refresh does not come into evidence unless the *opponent* wishes to offer it. Since it is the testimony that constitutes the evidence in present recollection refreshed cases, there is no problem with the best evidence rule, and the original is not required.

> "On the other hand, in past recollection recorded cases, the writing is the evidence, not the testimony, and a best evidence rule issue may arise. The predicate for past recollection recorded is set forth in Rule 803(5). Only if the memory of the contents is not refreshed may the past recollection recorded be used. If there is no present recollection of the contents, the writing may qualify as a past recollection recorded, but only if the witness can testify that he or she does remember that the writing is accurate." (Citations omitted). Wendorf, Schlueter, and Barton, *Texas Rules of Evidence Manual,* 3d ed., VI–85–87.

Mrs. Howard's testimony was neither past recollection recorded nor present recollection refreshed. She testified that she personally did not recall any construction work and that the records of Billy's Bar reflected no invoices or payments for construction work. As reflected by the prosecutor's response to appellant's objection, this evidence was being offered pursuant to Rule 803(7).

> "Rule 803(7) permits proof of the nonoccurrence or nonexistence of a matter by showing that no record of it is found in regularly kept records that would be expected to have recorded it if it did occur or exist. The prior Texas business records statute contained a similar provision.

> "A presentation under Rule 803(7) requires, first, a foundation sufficient to qualify the record under Rule 803(6). Second,

either the record must be introduced, or the custodian or other qualified witness must testify that a diligent search failed to disclose the matter. The best evidence rule is not violated by testimony that a writing does not contain any reference to a matter...." (Citations omitted). Goode, Wellborn, and Sharlot, supra, Section 803.12.

I realize that it may be too late to correct our earlier mistakes in this matter. Since our opinion in Young II was a plurality, we should now order that it be withdrawn, and improvidently grant this petition. To be addressing matters that are not properly presented by the record before us is tantamount to issuing an advisory opinion.

I respectfully dissent.

WHITE and MEYERS, JJ., join this dissent.